UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| THOMAS MAYTON, | § | |
| --- | --- | --- |
| *Plaintiff*, | § | |
| *v*. | § | Civil Action No. SA-17-CV-179-XR |
| TEMPOE, LLC, ET AL., | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered Defendants' Motion to Compel Arbitration and to Dismiss. Docket no. 9. Having considered the Motion and the applicable law, Defendants' Motion is GRANTED.

**BACKGROUND**

On March 9, 2017, *pro se* Plaintiff Thomas Mayton filed a Complaint in this Court against Defendants Tempoe, LLC and Sears, Roebuck and Company ("Sears"), seeking damages as well as injunctive and declaratory relief. Docket no. 1 at 1. Plaintiff brings statutory causes of action for violations of the Electronic Funds Transfer Act, the Telephone Consumer Protection Act, the Consumer Leasing Act, and the Racketeering Interstate Corrupt Organization Act, and the Texas Deceptive Trade Practices Act, along with a common law claim for fraud. *Id*. at 4–10. Plaintiff brings these same causes of action against both defendants. *See id*.

Plaintiff alleges that he "entered into an agreement with defendants . . . for the purchase of a mattress set" at a Sears store. Docket no. 1 at 3. He alleges that a Sears employee "suggested a program in which plaintiff would make an initial payment, then make four more additional payments of $228.22, at which time the balance would be paid." *Id*. The Sears employee

1

allegedly told Plaintiff that this was a "great deal," but never disclosed that this arrangement was for a lease, rather than a purchase, of the mattress. *Id*. Plaintiff alleges that he "agreed to make four payments [of] $228.22 ending October 17, 2016." *Id*. He further alleges that the total price agreed upon for the purchase of the mattress was $1369.35, but "[t]o date defendants have taken eight payments totaling $1824.76 and now they are telling [him] that he must pay an additional $700." *Id*.

Plaintiff then allegedly received phone calls "and other communications from a representative in defendant's collection department, asking plaintiff why he was late on his payment which was due under the lease agreement." *Id*. at 3–4. Plaintiff states that he "advised defendant's representative that he did not lease a mattress set," but that Defendants nevertheless continued to make deductions from Plaintiff's bank account. *Id.* at 4.

In general, Plaintiff's complaint does not differentiate most of its allegations between the two defendants, nor does it provide a clear explanation of Tempoe's identity or role in the underlying mattress transaction. As explained by Defendants in their motion to compel arbitration:

> Tempoe is a national, direct-to-consumer leasing company, which offers leases of consumer goods pursuant to the federal [Consumer Leasing Act] and its implementing regulation, Regulation M (12 C.F.R. § 1013) . . . Tempoe employs a leasing process that allows customers to seek approval for and enter into lease agreements with Tempoe for merchandise located at Sears stores across the country. At Sears locations, for example, customers may apply directly to Tempoe through an electronic lease application and consummation portal for a lease of certain durable property available at Sears. Simultaneously with the consummation of any lease, Tempoe purchases the merchandise at full retail price from the merchant and leases it to the consumer.

Docket no. 9 at 7–8 (internal citations to Docket no. 9-1 (Declaration of Tempoe Chief Administrative Officer Donna M. Rines) omitted).

On April 24, 2017, Defendants filed a Motion to Compel Arbitration and to Dismiss, or in the alternative, a Motion to Stay. Docket no. 9. According to Defendants, the agreement between Plaintiff and Sears covering the mattress was actually a Lease Agreement which contains an arbitration clause that compels Plaintiff's claims to arbitration. Docket no. 9 at 7. The arbitration clause upon which Defendants rely states "[y]ou and we agree that any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration in the state where you live instead of a lawsuit." Docket no. 9-1 at 15.

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). And it is for the court, not the arbitrator, to decide whether the parties have agreed to arbitrate the disputes in question. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).

Determining whether to compel Plaintiff's claims to arbitration requires the application of a two-pronged test. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002). The first prong is aimed at determining whether the parties agreed to arbitrate the dispute in question. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). In particular, this prong involves two sub-inquiries: 1) whether a valid agreement to arbitrate exists between the parties, and 2) whether the agreement covers the dispute in question. *Id*. The second prong requires a determination of "whether legal constraints external to the parties' agreement foreclosed the arbitration" of the

3

relevant claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

## II. Plaintiff's claims against Tempoe are subject to arbitration.

### a. The parties agreed to arbitrate the dispute in question.

#### i. There is a valid agreement to arbitrate between the parties.

Plaintiff's main contention in opposition to Defendants' motion to compel arbitration is that "[t]here was no lease and there was no signed agreement." Docket no. 10 at 2. Plaintiff provides no evidence to support this stance, and indeed, his assertion that there was "no signed agreement" is at odds with his complaint, which specifically alleges that he entered into an agreement with Defendants—"[P]laintiff entered into an agreement with defendants, and each of them, for the purchase of a mattress set." Docket no. 1 at 3.

Defendants on the other hand argue that Plaintiff agreed to arbitrate. As evidence, they provide the declaration of Tempoe's Chief Administrative Officer, Donna M. Rines, who explains how Tempoe's agreement formation typically occurs and how it occurred in Plaintiff's case. Docket no. 9-1 at 4–8. According to Rines, a customer verifies his or her identity with a merchant (here, Sears) by providing his or her social security number and other personal information. *Id*. at 6. After providing these details and filling out an application, the customer is given an electronic pen pad on which he or she must electronically sign to approve the transaction. *Id*. At various points, the pen pad displays certain questions and messages, including that the customer's lease application has been approved and asking whether the customer "accept[s] this Lease offer including all the terms and conditions." *Id*. A customer must select the "Yes" option on the pen pad in order to accept the terms and proceed with the transaction. *Id*.

Then, the customer must sign his or her name on the electronic pen pad. *Id*. Directly above the box in which the customer must sign is the following language:

Lease Offer

> WHEN YOU SIGN BELOW YOU AGREE TO THE TERMS AND CONDITIONS OF THE LEASE OFFER, YOU AGREE THAT YOU HAVE RECEIVED THE LEASING TERMS AND CONDITIONS TEAR-OFF SHEET, AND AGREE TO AUTHORIZE ELECTRONIC PAYMENT FOR TODAY'S FIRST PAYMENT, IF APPLICABLE.

*Id*. at 6–7; *see also* Docket no. 9-1 at 9–12 (Tempoe's Leasing Transaction Job Aid, which displays screen grabs of the electronic pen pad as described by Rine).

Defendants also provide a copy of the Leasing Terms and Conditions Tear-off Sheet referenced on the electronic pen pad. Docket no. 9-1 at 13–15. It contains the relevant arbitration clause, which states in part that "[y]ou and we agree that any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration in the state where you live instead of a lawsuit." *Id*. at 15.

Aside from these general practices and documents, Defendants provide Plaintiff's Lease Receipt and Payment Schedule, which notes the exact date and time at which Plaintiff electronically signed, provided the last four digits of his social security number, and accepted the electronic funds transfer authorization. Docket no. 9-1 at 17. Finally, Defendants provide a copy of Plaintiff's Lease Agreement itself, identifying Plaintiff as the Lessee and containing the same arbitration clause that appears in the Leasing Terms and Conditions Tear-off Sheet. Docket no. 9-1 at 20–24. According to Rine, when Plaintiff executed the Lease Agreement, Tempoe sent him an email containing a link to these two documents. Docket no. 9-1 at 7.

In determining whether the parties formed a valid agreement to arbitrate, the court looks to ordinary, state law contract principles. *Klein*, 710 F.3d at 236. At this stage, the court does not yet apply federal policies that warrant resolving ambiguities in favor of arbitration. *Id*. at 236–37. "If one party denies that there is a binding arbitration agreement, the trial court may summarily decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations." *In re Kellogg Brown & Root*, 80 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The party seeking to compel arbitration bears the initial burden of establishing the existence of an arbitration agreement (and that the asserted claims fall within its scope); the burden then shifts to the party resisting arbitration to present evidence showing why the arbitration agreement should not be enforced. *Kershaw v. CB Restaurants, Inc.*, 5:15-CA-462-OLG, 2015 WL 12743609, at *1 (W.D. Tex. Aug. 6, 2015) (citing *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

Texas law requires that where the total amount to be paid under a lease contract is $1,000 or greater, as alleged here, there must be "a writing, signed by the party against whom enforcement is sought . . . sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term." TEX. BUS. & COMM. CODE § 2A.201(a). Because Texas has adopted the Uniform Electronic Transactions Act, "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." TEX. BUS. & COMM. CODE § 322.009(a); *see also Thick v. Dolgencorp of Tex., Inc.*, 4:16-CV-00733, 2017 WL 108297, at *2 (E.D. Tex. Jan. 11, 2017) ("Texas has adopted the

Uniform Electronic Transactions Act (TEX. BUS. & COM. CODE §§ 322.001–322.021), which provides that electronic signatures may be used in contract formation.").

The Court finds that Defendants have carried their burden of showing that the parties entered in to a valid agreement to arbitrate under Texas law, and Plaintiff has adduced no evidence to the contrary. Defendants' evidence shows that Plaintiff provided his personal details (including his social security number), was notified that his application was approved, affirmatively "accept[ed] this Lease offer including all the terms and conditions," and signed his name on the electronic pen pad just below a statement that he was accepting the terms of the Leasing Terms and Conditions Tear-off Sheet (which includes the arbitration clause). In support of this sequence of events, Defendants provide a receipt and the agreement itself, both memorializing Plaintiff's signing of the agreement. These documents, taken together, show the existence of a writing, signed by Plaintiff, which adequately describes the mattress to be leased. With Plaintiff presenting no evidence to the contrary,[1] Defendants have carried their burden. *See Thick*, 2017 WL 108297 at *2 ("Plaintiff only contends that she does not recall signing the Agreement and would not have signed the Agreement. There is no evidence before the Court to indicate that Plaintiff did not sign the Agreement. [Defendant] has met [its] burden of establishing, by a preponderance of evidence, that a valid agreement to arbitrate exists between the parties.").

For these reasons, the Court finds that the parties entered into a valid agreement to arbitrate.

---

[1] To the extent that Texas law might require trial courts to conduct a hearing on this issue, there are no controverted facts for the Court to decide due to Plaintiff's failure to adduce any evidence supporting his position. As a result, the court may "summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations." *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992).

### ii. The agreement to arbitrate covers the dispute in question.

Turning to whether the arbitration agreement covers the dispute in question, Defendants receive the benefit of a "presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T*, 475 U.S. at 650 (internal quotations and alterations omitted). The Fifth Circuit "distinguishes between broad and narrow arbitration clauses." *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). In *Hornbeck Offshore*, the court characterized as "broad" a clause that read "should any dispute arise between [the parties], the matter in dispute shall be referred to arbitration." *Id*. at 753. The court found it "difficult to imagine broader general language than that contained" in a clause containing references to "any dispute." *Id*. at 755 (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1144–45 (5th Cir. 1985), in which the Fifth Circuit reached a similar conclusion regarding a clause that required the parties to "submit 'any dispute or difference between the parties' to arbitration."). When an arbitration provision employs broad language in describing what claims it covers, "only the most forceful evidence of a purpose to exclude [a given] claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960).

The arbitration clause in the Lease Agreement provides that: "You and we agree that any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration in the state where you live instead of a lawsuit." Docket no. 9-1 at 15. This type of language is analogous to the "any dispute" language that the Fifth Circuit has previously characterized as broad. Further, Plaintiff's claims arise out of the formation of the Lease

Agreement containing that clause. His Electronic Funds Transfer Act claim relates to the alleged withdrawal of funds from his account to cover monthly lease payments. Docket no. 1 at 4. His Telephone Consumer Protection Act claims arise from Defendants' alleged calls to collect on late lease payments. *Id*. at 3–4. His Consumer Lease Act claims are based on Defendants' alleged failure to provide statutorily required disclosures. *Id*. at 7. His RICO claims allege that Defendants participated in a "pattern of racketeering activity" to "falsify[ ] financial records to conceal and obscure the terms and conditions of the sale of the mattress set." *Id*. at 8. His fraud claims are premised on Defendants' alleged misrepresentations of the underlying mattress transaction, which takes the form of the Lease Agreement. *Id*. at 8–9. And his DTPA claims are based on substantially the same misrepresentations and omissions. *Id*. at 9–10. As a result, this sub-inquiry and the entire first prong point towards compelling arbitration of Plaintiff's claims against Tempoe.

    **b. No legal constraints external to the parties' agreement foreclose the arbitration of Plaintiff's claims.**

The second prong requires a determination of "whether legal constraints external to the parties' agreement foreclosed the arbitration" of the relevant claims. *Mitsubishi Motors*, 473 U.S. at 628. As the first prong of the test is satisfied, arbitration must be compelled unless some "federal statute or policy renders the claims nonarbitrable." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). As noted above, Plaintiff brings a number of claims under federal statutes, but as a general matter, "federal statutory claims can be appropriately resolved through arbitration . . . because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 89–90 (2000) (internal quotations omitted). Relevant to the arbitrability of a claim arising out of federal law is "whether Congress has

evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 90.

In particular, the Supreme Court has held that the civil provisions of RICO are arbitrable. *See generally Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220 (1987); *see also Griggs v. Sge Mgmt.*, LLC, A-15-CV-422-LY-ML, 2015 WL 11423656, at *6 (W.D. Tex. Oct. 15, 2015), *report and recommendation adopted*, 1:15-CV-422-LY, 2015 WL 11438110 (W.D. Tex. Nov. 4, 2015) (finding no "federal statute or policy that renders an otherwise arbitrable dispute nonarbitrable" on plaintiffs' RICO claims). Further, district courts in this circuit have held that some of Plaintiff's remaining statutory claims are arbitrable as well. *See, e.g.*, *Harding v. Midsouth Bank N.A.*, No. 12-CV-1562, 2012 WL 4753414, at *1 (W.D. La. Oct. 3, 2012) (compelling Electronic Funds Transfer Act claim to arbitration); *Cubria v. Uber Techs., Inc.*, No. A-16-CA-544, 2017 WL 1034731, at *5 (W.D. Tex. Mar. 16, 2017) (compelling Telephone Consumer Protection Act claim to arbitration); *Lauzon v. Pulte Homes, Inc.*, SA-12-CV-177-XR, 2012 WL 4434761, at *6 (W.D. Tex. Sept. 24, 2012) (compelling Texas DTPA claim to arbitration). Plaintiff has not identified any statutes or policies that cut against the arbitrability of his claims, and the Court is aware of none.

As a result, Plaintiff's claims against Tempoe are subject to arbitration. The parties entered into a valid and enforceable contract that contains an arbitration clause. The clause covers all claims Plaintiff brings against Tempoe, and no external legal constraint bars sending those claims to arbitration.

### III. Plaintiff's claims against Sears are also subject to arbitration.

Sears is not a party to the Lease Agreement and therefore would not ordinarily be bound by any of its terms or conditions. Defendants argue that Plaintiff's claims against Sears should

nevertheless be compelled to arbitration under the theory of equitable estoppel. Docket no. 9 at 11. The Court agrees.

The FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). As such, "[w]ho is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003). Under Texas law, the doctrine of equitable estoppel allows for an arbitration agreement to be enforced by a nonsignatory third party under certain circumstances. *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 608 (5th Cir. 2016).

The Fifth Circuit has held that the Supreme Court of Texas, "if faced with the question, would adopt intertwined claims estoppel." *Id*. at 612. This version of estoppel "involves compelling arbitration when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations." *Id*. at 610 (internal quotations omitted). As such, "tight relatedness of the parties, contracts and controversies" estops a bound party from avoiding arbitration with respect to her claims against a third-party nonsignatory. *Id*. at 610 (quoting *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)). A plaintiff's undifferentiated treatment of signatory and nonsignatory parties in the complaint, by making indistinguishable factual allegations against them, is evidence of this "tight relatedness." *See Hays*, 838 F.3d at 612–13.

Here, Plaintiff asserts claims against the nonsignatory Defendant Sears that depend on the formation of the Lease Agreement. In his Complaint, Plaintiff "treats [Defendants] as a single unit" and makes the same factual allegations against them "as if they were interchangeable."

*Hays*, 838 F.3d at 612. Further, Plaintiff's claims against both defendants arise out of the same transaction surrounding the mattress, which indicates a tight relatedness between the two controversies. Moreover, this transaction is closely related to the arrangement between Tempoe and Sears,[2] such that without it, Tempoe presumably would not have been involved with Plaintiff at all. Plaintiff's claims against Sears relate both to the formation of the Lease Agreement, as well as to Sears' alleged obligations under the Lease Agreement. *See Hays*, 838 F.3d at 613. As a result, there is a "tight relatedness of the parties, contracts and controversies" sufficient to compel Plaintiff to arbitration with respect to his claims against Sears.

## IV. Dismissal of this case, rather than a stay, is appropriate.

The FAA provides that when an issue in a lawsuit is referable to arbitration, a federal district court must, "on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, the Fifth Circuit has held that "when *all* of the issues raised in the district court must be submitted to arbitration," dismissal of the claim may be proper. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis added). In these situations, ordering a stay as opposed to a dismissal, would serve no purpose because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Id*. (quoting *Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986))).

Even in these circumstances, though, "dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice."

---

[2] *See* Docket no. 9 at 2 ("Simultaneously with the consummation of any lease, TEMPOE purchases the merchandise at full retail price from the merchant and leases it to the consumer.").

*Glazer's, Inc. v. Mark Anthony Brands Inc.*, SA-11-CV-977-XR, 2012 WL 2376899, at *6 (W.D. Tex. June 22, 2012) (citing *Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 331, n. 9). Entry of a stay as opposed to a dismissal may be appropriate where "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed." *Apache Bohai Corp.*, 330 F.3d at 309.

Plaintiff here presents no justification for a stay rather than a dismissal, and indeed, this Court is aware of no further actions it that might need to take beyond executing the judgment upon completion of the arbitration. As a result, the Court finds that this case should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Dismiss (Docket no. 9) is GRANTED. Plaintiff's claims are DISMISSED without prejudice.

It is so ORDERED.

SIGNED this 7th day of June, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE